693 A.2d 573

ROSA INTILI, PLAINTIFF, v. ANTHONY C. DiGIORGIO, MICHAEL DiGIORGIO, AND LINDA DiGIORGIO, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

January 27, 1997.

*David B. Katz*, for Plaintiff.

*Anthony Iacullo*, for defendants Anthony and Linda DiGiorgio.

*Scott V. Spina*, for defendant Michael DiGiorgio.

MARGOLIS, P.J. CH.

The issue before this Court is whether the plaintiff's claims under *N.J.S.A.* 25:2–25 of the Uniform Fraudulent Transfer Act ("UFTA"), are time barred.[1]

---

[1] *N.J.S.A.* 25:2–25 provides:

Transfers fraudulent as to present and future creditors

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

The undisputed facts are as follows: On May 14, 1990, the plaintiff, Rose Intili, filed a complaint in the Superior Court Law Division, Essex County against Anthony and Josephine DiGiorgio for money due on a note. On July 16, 1990, final judgment by default was entered because defendants failed to file a timely answer or otherwise move. On November 19, 1991, Anthony DiGiorgio conveyed his one-half interest in real property located in Paterson, New Jersey to Michael DiGiorgio for no consideration, which deed was recorded in the Passaic County Register's Office on November 26, 1991. On January 4, 1993, the Law Division vacated the default judgment against defendants and the matter proceeded to trial. On October 25, 1993, Rose Intili obtained a final judgment against Anthony and Josephine DiGiorgio, jointly and severally. Through deposition on December 21, 1993, plaintiff discovered that defendant Anthony DiGiorgio transferred his interest in the Paterson property to defendant Michael DiGiorgio in 1991. On May 1, 1996, plaintiff filed this action seeking, *inter alia,* to void Anthony DiGiorgio's transfer.

Defendants' move to dismiss plaintiff's complaint under *R.* 4:6–2(e).[2] Defendants argue that plaintiff's cause of action has been extinguished under *N.J.S.A.* 25:2–31.[3] Since plaintiff failed to

---

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

[2] In response to this Court's inquiry, plaintiff's attorney has submitted a certification detailing the various steps taken to satisfy plaintiff's judgment. As such, the defendant's motion to dismiss has been converted into a motion for summary judgment even though the facts are undisputed. *See R.* 4:6–2(e).

[3] *N.J.S.A.* 25:2–31 provides:

Extinguishment of cause of action

A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:

assert her UFTA claim within four years of the November 26, 1991, transfer and had actual knowledge of the transfer during these four years, defendants reason that the plaintiff's cause of action is time barred.

In response, plaintiff urges this Court to toll and apply equitable considerations to § 31's time limitations. Plaintiff contends that her UFTA claim is not time barred because the Legislature did not intend §31 to be a statute of repose. Rather, plaintiff asserts that the Legislature intended § 31 to be a statute of limitations, which may be tolled under the proper circumstances. Plaintiff maintains that once defendants vacated the default judgment on January 4, 1993, plaintiff's creditor status and defendants' debtor status were removed and plaintiff had no right to pursue a UFTA claim until the final judgment was re-entered on October 25, 1993. In essence, plaintiff asserts that she did not have four years to assert her UFTA claim, because plaintiff's judgment was placed on "hold" between January 4, 1993, and October 25, 1993. By relaxing and tolling § 31's time limits with this nine and one-half month interval, plaintiff argues that her May 1, 1996 complaint was filed within four years of the November 26, 1991 transfer.[4]

This court, therefore, must determine whether plaintiff's cause of action was timely filed as a matter of law. *See R.* 4:46–2. It should be noted that whether § 31's time limitation is viewed as

----

a. Under subsection a. of R.S. 25:2–25, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

b. Under subsection b. of R.S. 25:2–25 or subsection a. of R.S. 25:2–27, within four years after the transfer was made or the obligation was incurred; or

c. Under subsection b. of R.S. 25:2–27, within one year after the transfer was made or the obligation was incurred.

[4] It should be noted that the "transfer" date is the date that the real property deed was recorded. *See N.J.S.A.* 25:2–28; *Boardwalk Regency Corp. v. Burd,* 262 *N.J.Super.* 162, 620 A.2d 448 (App.Div.1993).

being procedural or substantive is not a critical issue in determining whether the limitations period may be tolled in certain cases. *See White v. Violent Crimes Compensation Bd.*, 76 *N.J.* 368, 379, 388 *A.2d* 206 (1978). Rather, this court must determine whether the "legislative purpose underlying the statutory scheme will . . . be effectuated" by allowing equitable considerations to be applied. *See id.*

Under fundamental principles of statutory construction, this court's "paramount judicial goal" is to ascertain the Legislature's intent, which overrides any literal reading of the statute. *See Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.2d* 248 (1994). "[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion. . . .' " *Schierstead v. Brigantine*, 29 *N.J.* 220, 230, 148 *A.2d* 591 (1959) (citations omitted). Further, the court must consider the "entire legislative scheme." *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.2d* 1368 (1987). "The inquiry in the ultimate analysis is the true intention of the law; and, to this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls." *Wollen v. Borough of Fort Lee*, 27 *N.J.* 408, 418, 142 *A.2d* 881 (1958).

Recently, the Appellate Division detailed the UFTA's history and purpose. *Flood v. Caro Corp.*, 272 *N.J.Super.* 398, 640 *A.2d* 306 (App.Div.1994). The *Flood* court explained:

> In 1988, New Jersey adopted the Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2-20 to -34, to replace the Uniform Fraudulent Conveyance Law, which had been in effect since 1919. New Jersey's version of the Act is substantially the same as the uniform statute. In the years since it was promulgated by the Commissioners on Uniform State Laws in 1984, the Act has been adopted in at least twenty-nine states.
>
> The Act modernizes the law respecting the rights and remedies of creditors in cases of transfers of assets by debtors the design or effect of which is to prevent or impede satisfaction of claims out of the debtor's assets, or to prefer favored claimants. A prime purpose of the Act is to align state law on fraudulent transfers with the federal Bankruptcy Act, and the Uniform Commercial Code–Secured

Transactions. Another goal is to make uniform the law among the states that adopt the Act.

*Id.* at 403–04, 640 *A.*2d 306 (citations and footnotes omitted).

Furthermore, the *Flood* court noted:

A creditor who is entitled to a remedy under the Act has a range of protective possibilities. If the creditor has a judgment against the debtor, application may be made in the action for a court order permitting execution on the asset transferred or its proceeds. Such an application necessitates proceedings suitable to determine the rights of the parties, including possibly innocent transferees for value, perhaps requiring a plenary trial to determine disputed material facts.

Any creditor, with or without a judgment, may prosecute a suit (1) to avoid the transfer to the extent necessary to satisfy the claim, (2) to attach or otherwise provisionally secure the asset transferred, (3)(a) to enjoin further disposition of the asset transferred or other property, or (3)(b) to appoint a receiver.

*Id.* at 405, 640 *A.*2d 306; *see generally* Richard E. Cherin, *Fraudulent Transfers Redefined Under New Act,* 122 *N.J.L.J.* 1362 (1988) (discussing the differences between the UFCA and the newly enacted UFTA).

Additionally, the UFTA, unlike the UFCA, specifically adopts a statute of limitations. According to the New Jersey Legislature, the UFTA's statute of limitations "bars the right rather than the remedy on expiration of the statutory periods prescribed." *See* NEW JERSEY SENATE LABOR, INDUSTRY AND PROFESSIONS COMMITTEE STATEMENT REPORT, Assembly No. 1265, c. 74 (1988).[5]

---

[5] Although not binding, it should be noted that the drafters of the Uniform Fraudulent Transfer Act commented as follows:

(1) This section is new. Its purpose is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy....

(2) Statutes of limitations applicable to the avoidance of fraudulent transfers and obligations vary widely from state to state and are frequently subject to uncertainties in their application. Together with § 6, this section should mitigate the uncertainty and diversity that have characterized the decisions applying statutes of limitations to actions to fraudulent transfers and obligations. The periods prescribed apply, whether the action under this Act is brought by the creditor defrauded or by a purchaser at a sale on execution levied pursuant to § 7(b) and whether the action is brought against the original transferee or subsequent transferee. The prescription of statutory periods of limitation does not preclude the barring of an avoidance action for laches.

■ Under *N.J.S.A.* 25:2–21, the UFTA defines a "creditor" as a "person who has a claim" and a "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The UFTA does not prevent a present or future "creditor" from seeking a remedy prior to judgment. *See Flood,* 272 *N.J.Super.* at 405, 640 *A.2d* 306; *N.J.S.A.* 25:2–29.[6] In other words, a defendant need not be a "debtor" [7] *before* plaintiff asserts a UFTA cause of action. *See R.* 4:27–2; [8] *Deerhurst Estates v. Meadow,* 70

---

[*UNIF. FRAUDULENT TRANSFER ACT,* § 9, 7A *U.L.A.* 641, 665–66 cmt. 1 & 2 (1984)].

6 Specifically, a "creditor" may obtain the following relief with and without a judgment:

25:2–29. Remedies of creditors
a. In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in R.S. 25:2–30, may obtain:
(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by Chapter 26 of Title 2A of the New Jersey Statutes and by Rule 4:60 *et seq.* of the Rules Governing the Courts of the State of New Jersey;
(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
(a) An injunction against further disposition by the debtor or transferee, or both, of the asset transferred or of other property;
(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(c) Any other relief the circumstances may require.
b. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

7 *N.J.S.A.* 25:2–21 defines a "debtor" as a "person who is liable on a claim."

8 R. 4:27–2 provides:
*Joinder of Remedies; Fraudulent Conveyances*
Except as provided by *N.J.S.A.* 2A:50–2 and 2A:5–22 (debt secured by mortgage) and except as otherwise provided by *R.* 4:7–5 (mandatory cross-

*N.J.Super.* 404, 409, 175 *A.*2d 662 (App.Div.1961) ("While the wisdom of the policy might be debated, we must obey the mandate of superior authority and allow the procedure. This new procedure does not mean that conveyances will be set aside as fraudulent before the creditor's claim has been reduced to judgment or other lien, but it does permit the filing of a complaint for that purpose, so that judgments subsequently obtained may have a better chance of being satisfied."). Accordingly, the UFTA expressly limits a creditor's right to set aside a transfer to the time period in the statute, notwithstanding the date a party obtains a final judgment.

Although this may seem to be a harsh interpretation, the Legislature also provided an additional, though shorter, time period. The second clause of § 31(a) provides, "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." By providing this one year "safety" provision, the Legislature expressly contemplated situations in which a creditor had a UFTA cause of action four years after a fraudulent transfer occurred or a fraudulent obligation was incurred.

▮ Through a sensible reading consistent with the Legislature's intent and statutory scheme, this court would contravene the UFTA's purpose by allowing the plaintiff's cause of action to continue under the undisputed facts of this case. Although defendants successfully vacated the default judgment on January 4, 1993, the plaintiff retained "creditor" status and the right to assert a UFTA "claim" with or without a final judgment. Further, plaintiff had record notice of the alleged fraudulent transfer on

claims), if a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, then the 2 claims may be joined in a single action, but the court shall grant relief therein only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to plaintiff, without first having obtained a judgment establishing the claim for money.

November 26, 1991, and actual notice on December 21, 1993. Yet, plaintiff did not institute her UFTA cause of action until *after* the four year statutory period had expired.[9]

Since the Legislature granted a defrauded creditor the right to pursue fraudulent transfers within four years from the transfer date, this court holds that the Legislature's purpose would be frustrated if *N.J.S.A.* 25:2–31's time limitations were relaxed.[10] Accordingly, plaintiff's May 1, 1996, complaint was *not* timely filed within four years of the transfer. For these reasons, the defendants' motion to dismiss is granted.

---

[9] As such, the "safety" provision also does not save plaintiff's cause of action because the plaintiff had record and actual notice within four years of the transfer date.

[10] *Accord In re Princeton—New York Investors, Inc.,* 199 *B.R.* 285, 293 n. 4 (Bankr.D.N.J.1996) ("This Court finds that *N.J.S.A.* § 25:2–31 is a statute of repose because it embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed."); *First Southwestern Financial Services v. Pulliam,* 121 *N.M.* 436, 912 *P.2d* 828, 830 (App.1996) ("[T]he UFTA operates in the same manner as other statutes of repose that extinguish a cause of action as of a certain date rather than simply blocking the remedy."); *McMaster v. Farmer,* 76 *Wash.App.* 464, 886 *P.2d* 240, 243 (1994) ("We hold that the equitable tolling doctrine does not apply to actions under UFTA because the extinguishment provision has displaced it."); *United States v. Vellalos,* 780 *F.Supp.* 705, 707 (D.Haw.1992) ("It is clear that the intent of the UFTA is to completely extinguish the statutory cause of action following the expiration of the delineated time period."); *contra Selvage v. J.J. Johnson & Assoc.,* 910 *P.2d* 1252, 1259 (Utah.Ct.App.1996) ("The 'transfer' referred to in section [25:2–31(c)] is the same transfer which gives rise to a claim under section [25:2–27(b)]. Therefore, it is apparent that the two events—the commencement of the running of the section [25:2–31(c)] time limit, and the creation of the insider transfer claim—are, in fact, simultaneous. Because a claim under [25:2–27(b)] does not accrue until the event causing the injury, the time limit in section [25:2–31(c)] is a statute of limitations.").