In the Matter of PRINCETON–NEW YORK INVESTORS, INC. and Seasons Resorts, Inc., Debtors.

Robert P. Gibbons, Trustee in Bankruptcy, Plaintiff,

v.

First Fidelity Bank, N.A., AHC, Inc., and Eugene Mulvihill, Defendants.

Bankruptcy Nos. 94–25534(RG), 94–25535(RG). Adversary No. 95–2826(RG).

United States Bankruptcy Court, D. New Jersey.

Nov. 13, 2000.

Sills, Cummis, Zuckerman, Radin, Tisch-man, Epstein & Gross, by Stuart J. Glick, Newark, NJ, for Defendant, First Union National Bank f/k/a First Fidelity Bank, N.A.

Hellring, Lindeman, Goldstein & Siegal by Richard B. Honig, Newark, NJ, for Trustee, Robert P. Gibbons.

Sheldon Schachter, Verona, NJ, for Defendant, Eugene Mulvihill.

## *OPINION*

ROSEMARY GAMBARDELLA, Chief Judge.

### MATTER BEFORE THE COURT

Before this Court is a motion by First Union National Bank, f/k/a First Fidelity Bank, N.A., ("Defendant") for the entry of an order dismissing Chapter 7 Trustee Robert P. Gibbons's ("Plaintiff") complaint against Defendant. Plaintiff alleges that Defendant violated a state fraudulent con-

veyance statute. This Court has previously ruled that federal bankruptcy law preempts one provision of that statute. Defendant now seeks dismissal on the grounds that the preempted provision may not be severed from the remainder of the statute. Defendants Eugene Mulvihill joins in the motion to dismiss. In opposition to the motion, Plaintiff argues that the statute is indeed severable. A hearing on this motion was held on September 28, 2000. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

Prior to filing a petition for relief, Princeton–New York Investors, Inc. ("Princeton") financed the acquisition of certain real estate through a $6,000,000 mortgage loan from First Fidelity Bank, N.A., now known a First Union National Bank. *See Gibbons v. First Fidelity Bank, N.A. (In re Princeton–New York Investors, Inc.)*, 199 B.R. 285, 288 (Bankr. D.N.J.1996) ("*Gibbons I*"), *aff'd* 219 B.R. 55 (D.N.J.1998).

On August 12, 1994, Princeton and its wholly-owned subsidiary, Seasons Resorts, Inc., (collectively, "Debtors") filed separate petitions for relief under Chapter 11 of the United States Bankruptcy Code. *See id.* at 289.

On October 6, 1994, Robert P. Gibbons was appointed Chapter 11 Trustee for Debtors. *See id.* By order dated March 11, 1999, the Chapter 11 cases were converted to Chapter 7 cases. On or about March 25, 1999, Robert P. Gibbons was appointed as the interim Chapter 7 trustee in both Chapter 7 cases.[1]

**Plaintiff Files Complaint**

On October 6, 1995, Plaintiff filed the complaint (the "Complaint") upon which this adversary proceeding is based and a Second Amended Complaint on June 19, 1996. *See id.* On September 1, 1988, Princeton acquired the former Playboy Hotel property in Vernon, New Jersey, consisting of a 678 room hotel situated on 577 acres of land, including a 27 hole golf course. Plaintiff alleges that, on November 14, 1990, Princeton sold to an investor a golf course and adjacent land for the amount of $20,000,000. *See id.* at 288. Pursuant to that transaction, Plaintiff alleges, $4,000,000 of the sale proceeds were allocated toward the payment and satisfaction of, not Princeton's indebtedness to Defendant, but the indebtedness of other non-debtor obligations to Defendant without the knowledge or consent of Princeton's creditors. *See id.* Mulvihill, a defendant in this action, allegedly served as a director and chief executive officer of Princeton. *See id.*

In Count I of the Complaint, Plaintiff alleges that the transfer to Mulvihill constitutes a fraudulent conveyance pursuant to 11 U.S.C. §§ 544 and 548 and the New Jersey Fraudulent Transfer Act ("NJFTA"), encoded at N.J.S.A. § 25:2–1. *See id.* at 289, 292. In Count II, Plaintiff alleges, pursuant to the same statutes, that the transfer constitutes a constructively fraudulent transfer. *See id.* The remaining counts are not relevant for the purposes of the determination of this matter.

**First Motion For Dismissal**

On December 14, 1995, Defendant moved to dismiss the Complaint for failure to state a claim upon which relief could be

---

1. On October 23, 2000, the United States Trustee filed a Report of Election of Chapter 7 Trustee in both cases. In that report, the United States Trustee states that: "In Seasons, creditors seeking to elect a trustee failed to meet the requirements of § 702(a) and therefore, Mr. Gibbons shall remain as the trustee pursuant to § 702(d)." *Id.* The report further states: "In Princeton, creditors seeking to elect Mr. [Gary] Marks [Esq.] met the requirements of § 702(a), and therefore, the court should enter the proposed Order Approving Election of Trustee." As of the date of this Opinion, there is an Objection to the Report of Election and Request for Hearing filed on November 1, 2000 by Robert P. Gibbons, Interim Trustee for Princeton. Hearings shall proceed separately on this matter.

granted. *See First Union Nat'l Bank v. Gibbons (In re Princeton–New York Investors, Inc.),* 219 B.R. 55, 57 (D.N.J.1998) (*"Gibbons II"*). Defendant argued, first, that Plaintiff had failed to state a claim under 11 U.S.C. § 548 on the grounds that the allegedly fraudulent transfer had occurred more than one year prior to the filing of the petition. *See Gibbons I,* 199 B.R. at 292. At the time Debtors had filed their petitions, 11 U.S.C. § 548 provided in relevant part:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted. . . .

11 U.S.C. § 548(a) (1994).

The trustee agreed to dismiss his claims under § 548 without prejudice to restoring those claims should facts be disclosed in discovery which demonstrate the requirements of § 548 have been met. *See Gibbons I,* 199 B.R. at 291.

Defendant argued, second, that Plaintiff possessed the rights of a hypothetical unsecured creditor pursuant to 11 U.S.C. § 544. *See Gibbons I,* 199 B.R. at 292. At the time of Debtors' petition filings, § 544 provided that applicable nonbankruptcy law governed such a creditor's right to avoid a transfer. *See* 11 U.S.C. § 544(b) (1994) ("The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim. . . ."). In this case, NJFTA constitutes the applicable nonbankruptcy law. Defendant argued that Plaintiff had failed to state a claim under § 544(b) on the grounds that

the right to state a claim under NJFTA had allegedly extinguished on or about November 14, 1994 pursuant to NJFTA, N.J.S.A. § 25:2–31. *See Gibbons I,* 199 B.R. at 292. N.J.S.A. § 25:2–31, a "statute of repose", provided in relevant part:

> A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless the action is brought:
>
> > a. Under Subsection a. of R.S. 25:2–25, within four years after the transfer was made or the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by claimant.

N.J.S.A. § 25:2–31 (1994).

On June 6, 1996, this Court entered an order dismissing Plaintiff's § 548 claims and denying Defendant's motion with respect to Plaintiff's § 544 claims. *See id.* at 298. This Court found that the Bankruptcy Code, § 546 in particular, preempts N.J.S.A. § 25:2–31. *See id.* At the time of Debtors' petition filings, 11 U.S.C. § 546(a) provided:

> (a) An action or proceeding under § 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—
>
> > (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title; or
> >
> > (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a) (1994). This Court found, therefore, that § 546 conferred upon Plaintiff two years from October 6, 1994, the date of his appointment, within which to file his avoidance claims, and hence, that Plaintiff had timely filed the Complaint within the two-year statutory period of § 546 of the Bankruptcy Code on October 6, 1995. *See id.* at 293, 298.

**District Court Affirms This Court's Order**

On April 27, 1997, the United States District Court for the District of New Jer-

sey (the "District Court") granted Defendant's motion for leave to file an interlocutory appeal of this Court's order. *See Gibbons II,* 219 B.R. at 57.

On March 13, 1998, the District Court, the Honorable Alfred M. Wolin, U.S.D.J., entered an order denying Defendant's appeal and affirming this Court's Order denying Defendant's motion for dismissal. *See id.* at 66.

The District Court affirmed this Court's determination that the Bankruptcy Code preempts N.J.S.A. § 25:2–31. *See id.* at 64. In reaching this determination, the District Court asserted:

> the Court looks to New Jersey law to determine whether [Plaintiff] can assert his claim against [Defendant] after the statute of limitations under [New Jersey] state law has run. However, the state law does not appear to contemplate the possibility of a Chapter 11 reorganization. The Court is mindful that [Plaintiff] is seeking to invoke a right that may go to an area of law traditionally within the province of the states. Yet, the right to avoid a fraudulent transfer in the bankruptcy context was not created exclusively by a state statute.

*Id.*

The District Court continued:

> [a]n explicit goal of the New Jersey legislature in enacting NJFTA was to extinguish the liability created by that statute if the avoidance action was not timely. Sections 544(b) and 546(a) of the Code create and limit the Trustee's right to avoid fraudulent transfers relating to the bankruptcy estate. Section 546(a) is not rendered superfluous upon expiration of a state statute of repose. And the Court reiterates that § 25:2–31 does not appear to have contemplated a proceeding in bankruptcy. In contrast, the Code contemplated existence of other law in the avoidance context. *See* 11 U.S.C. § 544(b) ("The trustee may avoid

a transfer ... that is voidable under applicable law....").

*Id.* (citation omitted).

It noted, further, that "[t]he suggestion that NJFTA controls administration of the bankruptcy estate is illogical" and that "while § 544(b) does not explicitly preempt state law, inclusion of § 546(a) in the Code evidences Congress'[s] intent to subordinate state law restrictions." *Id.* The District Court concluded:

> actions brought under § 544 are governed by § 546(a). Section 546(a) expressly applies only to actions brought under §§ 544, 545, 547, 548, or 553. The Code, while utilizing state substantive law, creates these avoiding powers. This is not a cause of action available to a trustee outside a bankruptcy court. *See In re Mahoney, Trocki & Assocs., Inc.,* 111 B.R. 914, 917–18 (Bankr. S.D.Cal.1990). "The fraudulent transfer action under § 544(b) is not an action to assert an independent state law created right on behalf of a trustee which was and is cognizable without the filing of a bankruptcy petition. This right, on behalf of a trustee ... is clearly the creation of the bankruptcy code." *Id.* at 918.

*Id.* at 64–65.

On the basis of the this and other reasoning, the District Court held that "the state statute must give way." *Id.* at 66.

## Plaintiff Files Second Motion For Dismissal

On July 7, 1998, Defendant filed a second motion for the entry of an order dismissing this case. *See* Notice of Motion to Dismiss As Against First Fidelity Bank, N.A.

Defendant argues that dismissal is warranted on the grounds that N.J.S.A. § 25:2–31 is not "severable" from the remaining provisions of NJFTA. *See* Brief in Support of First Union's Motion to Dismiss For Failure to State a Claim ("Defendant's Brief") at 9. In support of this argument, Defendant emphasizes, first,

that N.J.S.A. § 25:2–31 is a "statute of repose." *See id.* ("This provision 'bars the right rather than the remedy on expiration of the statutory periods prescribed.' ") (quoting New Jersey Senate Labor, Industry and Profession's Committee Statement Report, Assembly No. 1265–L.1988 c. 74.). Defendant emphasizes, also, that the Commission on Uniform Laws (the "Commission"), in addressing the Uniform Fraudulent Transfer Act ("UFTA") counterpart to N.J.S.A. § 25:2–31, declared:

> [t]his Section is new. It purpose is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy. The section rejects the rule applied in *United States v. Gleneagles Inv. Co.,* 565 F.Supp. 556, 583 (M.D.Pa.1983) (state's statute of limitations held not to apply to action by United States based on Uniform Fraudulent Conveyance Act).

*Id.* (quoting 7A U.L.A. at 665–66). Defendant stresses, further, that the District Court, in finding that the Bankruptcy Code preempts N.J.S.A. § 25:2–31, asserted that "an explicit goal of the New Jersey legislature in enacting NJFTA was to extinguish the liability created by that statute if the avoidance action was not timely." *Id.* at 10 (quoting *Gibbons II,* 219 B.R. at 64).

Defendant alleges that "[t]he New Jersey legislature plainly did not intend for the remainder of the statute to remain and stand alone for, to do so, would be tantamount to adopting the rule applied in *Glen Eagles* [sic], the very rule that § 25–2–31 [sic] of NJFTA was intended to change" and that "[t]o enforce the remainder of NJFTA by severing § 25–2–31 [sic] would impose a liability broader than that which was intended by the New Jersey legislature by removing a provision that was intended to qualify or restrict NJFTA." *Id.* Defendant maintains that because "this Court's prior ruling renders NJFTA inoperative," "there is no basis under New Jersey law to avoid the alleged transaction under 11 U.S.C. § 544." *Id.*

In opposition to the motion, Plaintiff argues, first, that the District Court did not "invalidate" N.J.S.A. § 25:2–31. *See* Plaintiff's Letter Memorandum Dated September 8, 1998 ("Plaintiff's Letter Memorandum") at 3. He emphasizes that the District Court held, rather, that the Bankruptcy Code preempts N.J.S.A. § 25:2–31. *See id.* He argues, as a result, that "there is no need for this Court to consider whether it should 'invalidate' the entire NJFTA." *Id.* Plaintiff argues, second, that "it is incumbent upon [Defendant] to demonstrate that in enacting NJFTA, the New Jersey Legislature intended that in the event a bankruptcy court were to limit the scope of NJFTA's statute of repose, NJFTA would be unavailable to a bankruptcy trustee seeking to set aside a fraudulent conveyance pursuant to Section 544(b) . . . ." *Id.* He stresses that "there is no reason to believe that in passing NJFTA (including its "statute of repose"), the Legislature contemplated Chapter 11 reorganizations." *Id.* at 4.

With respect to the Commission's comment concerning the UFTA counterpart to N.J.S.A. § 25:2–31, Plaintiff argues that "[Defendant] presents no evidence whatever that the intention to overrule the *Glen Eagles* [sic] case relates to bankruptcy or the avoidance powers of a bankruptcy trustee or that the decision of this Court frustrated the statutory goal of reversing *Glen Eagles* [sic]." *Id.* at 5. Finally, Plaintiff argues that "[i]n the cases cited by [Defendant] where courts struck down on constitutional grounds portions of statutes and refused to sever the offending section from the balance of the statute, it was clear that allowing the statute to remain would violate the intention of the legislature." *Id.* n. 2 (citing *Affiliated Distillers Brands Corp. v. Sills,* 60 N.J. 342, 289 A.2d 257 (1972); *New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners,* 48 N.J. 581, 227 A.2d 313 (1967)).

Plaintiff notes that Defendant has undertaken "no comparable analysis of legislative intent" in this case. *See id.*

## DISCUSSION

### I. Bankruptcy Rule 7012(b)/Federal Rule 12(b)(6) of Civil Procedure— Dismissal Standard

Bankruptcy Rule 7012(b), which incorporates Federal Rule 12(b)(6), provides for dismissal of any complaint that fails to state a claim upon which relief can be granted. When considering a motion to dismiss, a court must accept as true all allegations in the complaint and all reasonable inferences drawn from those allegations, and view them in light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, *reh'g denied*, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). The test for determining when to dismiss under this Rule is whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *See Holder v. Allentown*, 987 F.2d 188, 194 (3d Cir.1993). In making this determination, the court basically accepts the nonmovant's narrative of the facts and any reasonable inferences, but a court does not accept conclusory statements about the legal effect of those assertions. *Id.* at 194 (citing *Wright & Miller*, 5A Fed. Practice & Proc., § 1357 at p. 319).

As noted, this Court has held that the Bankruptcy Code preempts N.J.S.A. § 25:2–31, a provision of NJFTA. *See Gibbons I*, 199 B.R. at 298. The District Court has affirmed this ruling. *See Gibbons II*, 219 B.R. at 66. Defendant now seeks dismissal of Plaintiff's complaint on the grounds that the preempted provision may not be severed from the remaining portions of NJFTA. *See* Defendant's Brief at 9–10.

Accordingly, this Court addresses the issue of whether N.J.S.A. § 25:2–31 may be severed from the remaining provisions of NJFTA.

### II. Severability

■ In determining whether a preempted provision may be severed from the remaining portions of a statute, this Court applies New Jersey law. *See New Jersey State Chamber of Commerce v. Hughey*, 774 F.2d 587, 596 (3d Cir.1985) (applying New Jersey law in determining whether preempted provisions may be severed from other provisions of the Right to Know Act). *See also Watson v. Buck*, 313 U.S. 387, 395–96, 61 S.Ct. 962, 964, 85 L.Ed. 1416 (1941) (severability is a question of state law).

N.J.S.A. § 1:1–10 provides:

[i]f any title, subtitle, chapter, article or section of the Revised Statutes, or of any statute or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.

N.J.S.A. § 1:1–10 (1998).

■ According to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), "[s]ection 1:1–10 creates a presumption of severability, although it does not mandate a holding of severability if that is not in keeping with legislative intent." *Hughey*, 774 F.2d at 596.

■ The Supreme Court of New Jersey has asserted that "[t]he critical standard for determining issues of severability is the presumed intent of the Legislature." *Exxon Corp. v. Hunt*, 109 N.J. 110, 118, 534 A.2d 1 (1987). In *Affiliated Distillers Brands Corp. v. Sills*, 60 N.J. 342, 345, 289 A.2d 257 (1972), it declared that "[t]hat intent must be determined on the basis of

whether the objectionable feature of the statute can be excised without substantial impairment of the principal objects of the statute."

In *Hughey*, the Third Circuit observed that "[m]ost of the reported New Jersey cases holding that a challenged provision may not be severed from the whole, do so on the ground that, without the challenged provision, the remaining portions of the statute will no longer further the legislature's intent." *Hughey*, 774 F.2d at 596. It added that "[i]n other cases, however, where one aspect of a broad regulatory scheme is struck down, the New Jersey courts are likely to hold that legislative intent is better served by severing the invalid provision, which will result in a slightly less comprehensive regulation, than by striking down the entire statute, which would result in no regulation at all." *Id.* at 597.

 The Third Circuit asserted, further:

[l]egislative intent as to severability may also be gleaned from the structure of the statute. In *State v. Lanza,* 27 N.J. 516, 143 A.2d 571 (1958) the court declared that an invalid provision should be deemed severable from a valid one "unless the two are so intimately connected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the one without the other." 143 A.2d at 577. This is largely a question of whether the statute will continue to make sense after the challenged portion is excised. A regulatory statute may be permitted to stand if, "stripped of those provisions which are invalid, [it] remains a comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement."

*Id.* (citation omitted).

 The Third Circuit concluded:

the New Jersey courts use a common-sense approach to severability, holding that an invalid provision is severable if that is in keeping with legislative intent; legislative intent is ascertained by looking to the broad purpose of the statute, the degree to which the valid and invalid provisions are intertwined with one another, and the extent to which the statute remains comprehensive and logical after the invalid provisions are excised. *Id.* at 597–98, 143 A.2d 571.

In *Hughey*, the Third Circuit deemed the New Jersey Worker and Community Right to Know Act severable.[2] *See id.* at 598. It found that removal of certain preempted provisions by virtue of the federal Occupational Safety and Health Act of 1970 (OSHA) and OSHA's Hazard Communication Standard, 29 C.F.R. § 1900.1200 (1984), would not exact "drastic changes that would appear to be contrary to legislative purpose, and ... [would] not broaden the scope of the regulatory scheme by eliminating exceptions to the regulation." *Id.* It found, further, that the Act, following such removal, would remain "a 'comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement,'" which should be enforced to further the intent of the New Jersey legislature." *Id.* (quoting *Oxford Consumer Discount Co. v. Stefanelli,* 102 N.J.Super. 549, 561, 246 A.2d 460 (App.Div.1968)). *See also Exxon,* 109 N.J. at 120–21, 534 A.2d 1 (finding, on basis of legislative history, that provisions of New Jersey Spill Compensation and Control Act preempted by the federal Comprehensive Environmental Response, Compensation, and Liability Act were severable from remaining provisions); *Township of Mahwah v. Bergen County Board of Taxation,* 98 N.J. 268, 294–95, 486 A.2d 818 (finding grandfather clause in state municipality rebate statute severable from remainder of statute), *cert. denied, Borough of Demarest v. Township of Mahwah,* 471 U.S. 1136,

**2.** The Act requires the disclosure of hazardous substances in the "workplace" and "community." *See Hughey,* 774 F.2d at 590 (citing N.J.S.A. § 34:5A–2).

105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *Newark Superior Officers Ass'n v. City of Newark,* 98 N.J. 212, 231–32, 486 A.2d 305 (1985) (finding grandfather clause in state statute permitting certain city mayors to appoint their police chiefs severable).

## III. Severability of NJFTA

▪ Similarly, in this case, this Court finds that the New Jersey legislature would have intended the nonpreempted portions of NJFTA to remain operative. First, this Court notes that the Appellate Division of the Superior Court of New Jersey has asserted that UFTA, upon which NJFTA is based, "modernizes the law respecting the rights and remedies of creditors in cases of transfers of assets by debtors the design or effect of which is to prevent or impede satisfaction of claims out of the debtor's assets, or to prefer favored claimants." [3] *Flood v. Caro Corp.,* 272 N.J.Super. 398, 403, 640 A.2d 306 (App.Div.1994). Thus, the New Jersey legislature, in enacting NJFTA, clearly intended to facilitate the prosecution of fraudulent transfers. The Appellate Division also recognized that "[a] prime purpose of [UFTA] is to align state law on fraudulent transfers with the federal Bankruptcy Act, *see* 11 U.S.C. §§ 547 and 548...." *Id.* Thus, the New Jersey leg-

islature also clearly contemplated the application of NJFTA in bankruptcy proceedings.

▪ Second, it cannot be successfully argued that § 25:2–31 is tightly "intertwined" with the remaining provisions of NJFTA, or that § 25:2–31 and those provisions are "intimately connected" or "mutually dependent." Section 25:2–31 merely sets the deadlines by which a party must initiate a NJFTA action. Moreover, that section, entitled "Extinguishment of cause of action," is a self-contained section of NJFTA. Nor cannot it be said that removal of the provision would "make any drastic changes that would appear to be contrary to legislative purpose." *Hughey,* 774 F.2d at 598. Although it acknowledged that "[a]n explicit goal of the New Jersey legislature in enacting NJFTA was to extinguish the liability created by that statute if the avoidance action was not timely," the District Court also explicitly noted that "§ 25:2–31 does not appear to have contemplated a proceeding in bankruptcy." [4] *Gibbons II,* 219 B.R. at 64. Thus, because the legislature did not contemplate the application of § 25:2–31 in bankruptcy cases, removal of that section in such cases would not contravene legislative intent. [5]

3. The Appellate Division noted that "New Jersey's version of [UFTA] is substantially the same as the uniform statute." *Flood,* 272 N.J.Super. at 403, 640 A.2d 306.

4. Defendant also cites *Intili v. DiGiorgio,* 300 N.J.Super. 652, 661, 693 A.2d 573 (Ch.Div. 1997) for the proposition that "Legislature's purpose would be frustrated if N.J.S.A. [§] 25:2–31's time limitations were relaxed." *See* Defendant's Brief at 10 (italics omitted). As the District Court noted, however, "*Intili* did not implicate the [Bankruptcy] Code." *Gibbons II,* 219 B.R. at 63 n. 6. On that ground, the District Court found that "[*Intili*] is incongruous with the instant appeal" and declined to apply it. *See id.* Similarly, here, because *Intili* does not implicate the Bankruptcy Code, Defendant's reliance upon it in this, a bankruptcy case, is also misplaced.

5. Defendant emphasizes that N.J.S.A. § 25:2–31 constitutes a statute of repose. *See* Defen-

dant's Brief at 9 (stressing that the drafters of UFTA asserted that "[the] purpose [of the section upon which N.J.S.A. § 25:2–31 is based] is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy") (quoting 7A U.L.A. at 665–66). Defendant argues, on the basis of this fact, that the New Jersey legislature, in adopting the UFTA, expressed an intent that this section not be severable from the remainder of NJFTA. *See id.* at 10 ("The New Jersey legislature's expressed intent in enacting NJFTA was to include [§ 25:2–31].") (italics omitted). The New Jersey legislature's adoption of a statute of repose for NJFTA claims, however, is not necessarily indicative of an intent that the remaining portions of NJFTA be nonseverable from that provision. Again, in approving NJFTA, the New Jersey legislature did not contemplate the application of N.J.S.A. § 25:2–31 in bankruptcy cases. Thus, this Court disagrees with Defendant's argument,

Furthermore, removal would not "broaden the scope of the regulatory scheme by eliminating exceptions to the regulation." *Hughey,* 774 F.2d at 598. Defendant cites several cases in support of its proposition that "[s]everance is not permissible where it removes a condition or restriction on powers granted by statute." Defendant's Brief at 6 (citing *Affiliated Distillers,* 60 N.J. 342, 289 A.2d 257) (court struck down grandfather clause that protected about one-third of all liquor wholesalers from a statute forbidding them also to engage in distilling; the court held that the grandfather clause could not be severed from statute); *New Jersey Chapter,* 48 N.J. 581, 227 A.2d 313 (court struck down part of statute that provided that planners must be licensed, but licensed engineers, surveyors and architects are exempt from the requirements; court held that exemption cannot be severed from statute); *Rutgers Chapter of Delta Upsilon Fraternity v. City of New Brunswick,* 129 N.J.L. 238, 245, 28 A.2d 759 (N.J.Sup. Ct.1942), *aff'd,* 130 N.J.L. 216, 32 A.2d 364 (N.J.1943) (court struck down part of statute that exempted property of fraternal organizations from taxation, but specifically excluded college fraternities from the definition; the court held that exception for college fraternities cannot be severed without frustrating legislative intent to make tax exemptions narrow). Defendant's reliance upon these cases is misplaced. In analyzing these cases, the Third Circuit asserted that "in each, the court struck down an exception to a broader statutory rule, and held that, without the exception, the general rule was contrary to legislative intent." *Hughey,* 774 F.2d at 597–98. The Third Circuit asserted, further:

> In each of these cases the court was faced with a choice:

> it could strike down the statute in its entirety, or it could sever the exception

and broaden the statute's reach by enforcing the statute without exception. In each case the court decided to strike down the entire statute rather than risk imposing a regulation broader than the legislature intended.

*Id.*

In this case, as noted by the District Court, the New Jersey legislature, in enacting NJFTA, did not consider the application of § 25:2–31 in bankruptcy proceedings. Thus, application of NJFTA, without that section, in bankruptcy cases would *not* contravene legislative intent.

This Court also notes that preemption and the resulting removal of § 25:2–31 would occur only in bankruptcy cases. Moreover, in those cases, § 546(a) would require a trustee to initiate a NJFTA action within two years of the date of his or her appointment. *See* § 546(a).

Third, NJFTA will continue to "make sense" after the challenged provision is excised. As noted, § 25:2–31 is not tightly "intertwined" or "connected" with the remaining provisions of NJFTA. Without that section, the remainder of NJFTA continues to apply in bankruptcy cases. Thus, NJFTA, "remains a comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement." *Hughey,* 774 F.2d at 597 (quoting *Oxford,* 246 A.2d at 467). *See also In re Summers,* 108 B.R. 200, 204 (Bankr.S.D.Ill.1989) (finding that unconstitutional portion of Illinois exemption statute, providing that statute was to be applied in bankruptcy cases "pending on" statute's effective date, was severable and that remainder of statute was complete).

Finally, this Court notes that, in *Bank v. Schwartz (In re Schwartz),* 185 B.R. 479 (Bankr.D.N.J.1995), it recognized the severability of NJFTA. In that case, this Court addressed the issue of whether the Employee Retirement Income Security Act ("ERISA") preempts N.J.S.A. § 25:2–1(b), as it applies to IRA accounts.[6] *See*

at least inasmuch as bankruptcy cases are concerned.

---

6. At the time this Court rendered its opinion in *Schwartz,* N.J.S.A. § 25:2–1(b) provided in relevant part:

*id.* This Court noted N.J.S.A. § 1:1–10, and found that "N.J.S.A. § 25:2–1(b) as it pertains to IRA accounts may be severed from the portion relating to ERISA plans so that the portion relating to IRA accounts may remain in force." *Id.* at 488. It held that, "even if the Court were to find that ERISA had a preemptive effect on N.J.S.A. [§] 25:2–1(b), this Court could limit the preemption to ERISA plans by employing N.J.S.A. [§] 1:1–10." *Id.*

Therefore, this Court concludes that Defendant has not overcome the presumption of severability mandated by N.J.S.A. § 1:1–10. The New Jersey legislature simply could not have intended that § 25:2–31 be nonseverable from the remaining provisions of NJFTA, and concomitantly, that NJFTA be inoperative in bankruptcy cases.

## CONCLUSION

Accordingly, Defendant's Motion to Dismiss As Against First Fidelity Bank, N.A. is DENIED. An Order in accordance with this Opinion shall be submitted.

a. Except as provided in subsection b. of this section, every deed of gift and every conveyance, transfer and assignment of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against creditors.
b. Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution plan elected for the qualifying trust,

shall be exempt from all claims of creditors and shall be excluded from an estate in bankruptcy, except that:
1) no exemption shall be allowed for any preferences [or] fraudulent conveyances made in violation of the "Uniform Fraudulent Transfer Act," R.S. 25:2–20 *et seq.*, or any other State or federal law. . . .
*Schwartz*, 185 B.R. at 485 (citing N.J.S.A. § 25:2–1(b) (1995)).