272 N.J. Super. 398 (1994)
640 A.2d 306
JOSEPH FLOOD, T/A JOSEPH E. FLOOD REALTORS, PLAINTIFF-RESPONDENT,
v.
CARO CORPORATION, A N.J. CORPORATION, DEFENDANT-APPELLANT. JOSEPH FLOOD, T/A JOSEPH E. FLOOD REALTORS, PLAINTIFF-APPELLANT,
v.
CARO CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1994.
Decided April 18, 1994.
*400 Before Judges R.S. COHEN, D'ANNUNZIO and WALLACE.
Alfonse J. Cifelli argued the cause for appellant in A-3116-92T5 and respondent in A-5578-92T5 (Fiorello & Cifelli, attorneys; Mr. Cifelli of counsel and on the brief).
Eric A. Summerville argued the cause for respondent in A-3116-92T5 and appellant in A-5578-92T5 (Summerville, Radding & Campbell, attorneys; Mr. Summerville on the brief).
COHEN, R.S., J.A.D.
Two appeals arise out of plaintiff's action for a broker's commission on the sale of twenty-five condominium apartments from defendant Caro Corporation ("Caro") to Seton Hall University. After a bench trial, judgment was entered for plaintiff against Caro for $126,250 plus interest of $24,229.35, for a total of $150,479.35. Caro appealed; we affirm. The second appeal was taken by plaintiff from the denial of his application for an order to levy execution on an asset which Caro had transferred in a transaction *401 which plaintiff alleged was fraudulent and thus voidable. On that appeal, we reverse and remand.
First, as to the commission dispute. Caro's principal argument is that the evidence did not support the judgment in plaintiff's favor. Not so. There was ample credible evidence in the record demonstrating that Caro agreed to pay plaintiff a five percent commission if he produced a buyer, and that plaintiff pursued and ultimately procured Seton Hall, a party not only ready, willing and able to buy, but which ultimately bought the property. See Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551, 236 A.2d 843 (1967); Kuhn v. Spatial Design, Inc., 245 N.J. Super. 378, 388-89, 585 A.2d 967 (App.Div. 1991). It is of no consequence that plaintiff produced a sale of the twenty-five apartments in bulk instead of one at a time. There was nothing in Caro's engagement to pay a commission which excluded such a sale. It is similarly of no consequence whether plaintiff's commission was earned during an exclusive or an open listing of the property. It had to be one or the other, and in either event, the commission was earned.
It is true, as Caro points out, that the trial judge's letter opinion contains errors of fact. Our own review of the record satisfies us, however, that the errors were peripheral, and not involved in the judge's findings of consequential facts, and thus do not affect the soundness of the judgment.
Caro also argues that the court erred by including the cost of modifying the apartments in the purchase price when calculating plaintiff's five percent commission. We disagree. The Caro-Seton Hall contract called for a "purchase price" of $2,525,000. Of that amount, $2,300,000 was attributed to "real estate" and $225,000 to "construction." Several witnesses testified that the apartments were not finished when they were shown to Seton Hall officials and when the contract was signed. Seton Hall's Plant and Project Manager testified that $80,000 to $90,000 of the $225,000 was the cost for modification the units for student use, and that the rest was for completion of the units, which would have been required for any buyer. The fact that Seton Hall could have *402 engaged another contractor to finish the job is immaterial. Plaintiff was not retained to sell an unfinished building, and surely could not have sold unfinished units to individual unit buyers. The judge correctly included the construction cost as part of the purchase price in calculating plaintiff's commission.
Plaintiff's appeal challenges the denial of his post-judgment application to set aside Caro's assignment of a mortgage which apparently was Caro's only asset after the closing with Seton Hall. The goal of the application was to direct the mortgage proceeds toward execution of plaintiff's judgment, which had been partially satisfied out of escrowed closing proceeds. Supplementary proceedings pursuant to R. 4:59-1(e) had revealed that, at the closing of the sale to Seton Hall, part of the purchase price was satisfied by the execution of a mortgage to Caro for $500,000, payable $100,000 per year for five years, and that the mortgage had been assigned and was at least ostensibly out of the reach of an executing judgment creditor.
Plaintiff moved to declare the assignment of the mortgage a fraudulent transfer, and to order Seton Hall to satisfy plaintiff's judgment out of the next annual payment. The judge denied the motion with the following terse explanation:
... this Court is not willing to ... say that every time that somebody is trying to move money around to keep its personal existence or corporate existences viable is meant that it's in some way monies that are ultimately collectible by a subsequent judgment holder. So I'm going to deny your application.
The opinion did not deal with any of the significant and controlling provisions of the Uniform Fraudulent Transfer Act. N.J.S.A. 25:2-20 to -34.
The factual record before us is sparse. It appears that the property on which the apartments were built was owned by Mr. and Mrs. Farro. They transferred it in 1987 to Caro, a corporation which they apparently formed to develop the property, and they accepted in payment a note and mortgage for $500,000. The mortgage was recorded in February 1987. Caro agreed to sell the apartments to Seton Hall on July 11, 1990. The contract provided *403 that $500,000 of the $2,525,000 purchase price was to be paid in five equal yearly installments on a note secured by a mortgage. On July 16, 1990, plaintiff started suit for his commission, in part to tie up the proceeds of the sale to Seton Hall.
By an unrecorded assignment dated August 28, 1990, the day of the closing of the sale to Seton Hall, Caro transferred to the Farros its interest in the debt due from Seton Hall. On October 28, 1991, despite the prior transfer to the Farros, Caro assigned the mortgage to Brounell-Kramer-Waldor-Kane Agency ("BKWK") supposedly to satisfy obligations for insurance premiums due from Caro and also from Onorato Construction, Inc., and Ora Realty, Inc, both of which were also Farro family entities.
The insufficiency of this scenario to decide the case becomes apparent from a review of the applicable statutory law.
In 1988, New Jersey adopted the Uniform Fraudulent Transfer Act ("the Act"), N.J.S.A. 25:2-20 to -34, to replace the Uniform Fraudulent Conveyance Law, which had been in effect since 1919.[1] New Jersey's version of the Act is substantially the same as the uniform statute. In the years since it was promulgated by the Commissioners on Uniform State Laws in 1984, the Act has been adopted in at least twenty-nine states.
The Act modernizes the law respecting the rights and remedies of creditors in cases of transfers of assets by debtors the design or effect of which is to prevent or impede satisfaction of claims out of the debtor's assets, or to prefer favored claimants.[2] A prime purpose of the Act is to align state law on fraudulent transfers with the federal Bankruptcy Act, see 11 U.S.C. §§ 547 and 548, and the Uniform Commercial Code-Secured Transactions. *404 N.J.S.A. 12A:9-101 et seq.[3] Another goal is to make uniform the law among the states that adopt the Act. See N.J.S.A. 25:2-33.
N.J.S.A. 25:2-25 is not grossly different from repealed predecessor provisions. See N.J.S.A. 25: 2-11 to -13. It declares fraudulent both as to present and future creditors any transfer by a debtor (a) made with actual intent to defraud, or (b) made without receiving reasonably equivalent value in exchange (1) if the debtor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or (2) if the debtor intended to incur or believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.
§ 27 of the Act has two provisions, both designed to protect creditors whose claims arose before the time of a transfer by a debtor ("present creditors"). Neither requires showing an intent on the part of the debtor to hinder, delay or defraud creditors. The first provision, § 27a, which does not substantially differ from the 1919 Fraudulent Conveyance Law, declares fraudulent as to present creditors a transfer made by a debtor without receiving a reasonably equivalent value in exchange if the debtor was insolvent or became insolvent as a result of the transfer.
The second provision, § 27b, is a new one designed to deal with preferences. Consistent with the Bankruptcy Act, 11 U.S.C. § 547(b)(4)(B), it declares fraudulent as to present creditors a transfer made by a debtor to an "insider" for an antecedent debt if the debtor was insolvent and the insider had reasonable cause to believe the debtor was insolvent.[4] The premise of § 27b is that an *405 insolvent debtor should pay debts owed to unrelated creditors before paying debts owed to corporate insiders. See Unif. Fraudulent Transfer Act, prefatory note, 7A U.L.A. 641 (1984); Senate Committee Statement, supra, n. 3.
A creditor who is entitled to a remedy under the Act has a range of protective possibilities. If the creditor has a judgment against the debtor, application may be made in the action for a court order permitting execution on the asset transferred or its proceeds. § 29b. Such an application necessitates proceedings suitable to determine the rights of the parties, including possibly innocent transferees for value, perhaps requiring a plenary trial to determine disputed material facts.
Any creditor, with or without a judgment, may prosecute a suit (1) to avoid the transfer to the extent necessary to satisfy the claim, (2) to attach or otherwise provisionally secure the asset transferred, (3)(a) to enjoin further disposition of the asset transferred or other property, or (3)(b) to appoint a receiver. § 29a. Direct and subsequent transferees from the debtor have appropriate defenses. See § 30. We may take it that none of the defenses apply here, since the transferee, BKWK, has chosen not to participate in the litigation to raise them.
It is impossible to say on this record whether the transfer by Caro challenged by plaintiff is fraudulent under the provisions of either § 27a or 27b. The facial ambiguity of the transaction is the principal problem. The Farros sold Caro the property in 1987 for $500,000. In payment, they accepted a note and mortgage in that amount, and they recorded the mortgage at the time of the sale. The closing of the Caro-to-Seton Hall contract took place on August 28, 1990. In order to convey good title, Caro had to produce a release of the 1987 mortgage. It apparently did so. It *406 also took back a $500,000 mortgage from Seton Hall. On the same day, it seems to have assigned the Seton Hall mortgage debt to the Farros. Despite that, it seems to have assigned the same mortgage debt a year later to BKWK. Purposely or not, the participants confused the transaction with purported assignments of the debt to the Farros and also to BKWK. Further proceedings, possibly including a plenary hearing, will be required to permit informed fact-finding on the subject.
If the transfer is determined to have been from Caro directly to BKWK, then § 27a applies. Under that provision, a transfer is fraudulent as to present creditors if the debtor did not receive a reasonably equivalent value in exchange and was insolvent or became insolvent as a result of the transfer. Plaintiff is clearly a present creditor. A person need not have a judgment to be a creditor under the Act. A creditor need only have a claim, which is a right to payment, whether or not reduced to judgment and whether or not disputed. § 21. Plaintiff's claim existed when the transfer was made, that is, his right to a commission arose on the date of the Caro-Seton Hall closing, which was before the assignment of the mortgage debt to BKWK.
It is impossible to tell from this record whether Caro received a reasonably equivalent value from BKWK. We are told only that BKWK is an insurance agency which was owed some $400,000 in premiums by Caro and also by Onorato Construction, Inc., and Ora Realty, Inc., two other business entities owned by the Farro family. However, we are not told how much was owed to BKWK by each of the three. Plaintiff may well be correct that most of the $400,000 was owed by Onorato and Ora, since Caro was created only to build the one project involved in this case, and owned the project for a limited period of time.
The question of whose debts were satisfied by the transfer of the mortgage obligation to BKWK is of significance. Under § 27a the reasonably equivalent value taken in exchange for a transfer must be received by and for the benefit of the debtor-transferror and not some other person or entity. The reason is that an *407 exchange of value legitimizes a transaction because it provides the debtor a new asset or reduction of debt to replace the transferred asset on the debtor's balance sheet. Thus a transfer made in satisfaction of the debt of another is not made for reasonably equivalent value. Application of these principles requires that the court ascertain on remand what if any obligation of the debtor-transferror was involved in the exchange.
Application of § 27a also requires that a determination be made whether Caro was insolvent or was rendered insolvent by the transfer. That does not seem to be a very difficult matter to resolve in this case.
If it is ultimately determined that the transfer was not from Caro to BKWK, but from Caro to the Farros, then § 27b comes into play. The Farros are both "insiders." The term includes directors and officers of debtor corporations, §§ 22b(1) and (2), and "relatives" of directors and officers, § 22b(6). Spouses are relatives, § 22. In addition, the transfer, if made to the Farros, was made for an antecedent debt, the 1987 Caro purchase money mortgage, and the debtor, Caro, appears likely from the fragmentary record before us to have been insolvent at the time of the assignment to the Farros.
The application of § 27b to this case seems at first glance to be complicated by the Act's § 31c, which extinguishes a creditor's cause of action for a fraudulent transfer to an insider one year after the transfer was made. Clearly, plaintiff's application to satisfy its judgment out of the Seton Hall mortgage proceeds was initiated more than one year after Caro executed the unrecorded transfer to the Farros.
The apparent problem is resolved by § 28 of the Act, which contains provisions governing when a transfer is considered to be made for the purpose of the Act. A thorough discussion of the complex provisions is not necessary. It suffices for this case to say that the transfer of an asset consisting of a debt secured by a mortgage on real estate is a transfer permitted by law to be *408 perfected by recording, to the end that a good faith purchaser of the asset could not acquire an interest in the asset superior to the interest of the transferee. When no steps are taken to perfect by recording a transfer that applicable law permits to be so perfected, § 28a(2) deems the transfer to have been made immediately before the filing of the application to avoid it. See Unif. Fraudulent Transfer Act, comment 1 on § 6, 7A U.L.A. 659 (1984).
Thus, if the operative transfer in this case is the unrecorded assignment from Caro to the Farros, the transfer is deemed to have taken place just before plaintiff moved against it in 1993, and the one-year limitation is not an impediment to the application.
Affirmed on A-3116-92T5. Reversed and remanded on A-5578-92T5.
NOTES
[1] N.J.S.A. 25:2-7 to -19, repealed by L. 1988, c. 74, § 1, N.J.S.A. 25:2-34.
[2] For a good brief overview of the Act, its parallels with and its departures from its predecessor, see Richard E. Cherin, Fraudulent Transfers Redefined Under New Act, 122 N.J.L.J. Index Page 1362 (1988).
[3] The Act also repeals inconsistent provisions of Title 14A, N.J.S.A. 14A:14-10 to -12, applicable to corporate debtors. See Senate Labor, Industry and Professions Committee Statement, Assembly No. 1265-L. 1988, c. 74, appended to N.J.S.A. 25:2-20.
[4] Section 27a applies if "the debtor was insolvent at that time or the debtor became insolvent as a result...." Section 27b applies if "the debtor was insolvent at that time...." Insolvency in the Act is a balance sheet concept. See § 23a. It is unnecessary for this case to determine if there is an operative difference in the application of §§ 27a and 27b that is produced by the omission from 27b of the words, "became insolvent as a result."