NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1562-14T3

VICTOR ROSARIO, NILDA
MALDONADO, NOEMI FLORES
and JOSE FLORES,

    Plaintiffs-Appellants,

v.

MARCO CONSTRUCTION AND
MANAGEMENT INC. a/k/a MARCO
CONSTRUCTION, WILLIAM MUSEY,
and DOMINIC ANTONINI,
BALSLEY/LOSCO[1] REAL ESTATE,

    Defendants,

and

THE ESTATE OF STEPHAN MUSEY,

    Defendant-Respondent.

---

> APPROVED FOR PUBLICATION
>
> **January 12, 2016**
>
> APPELLATE DIVISION

---

        Argued December 7, 2015 — Decided January 12, 2016

        Before Judges Lihotz, Fasciale and Nugent.

        On appeal from Superior Court of New Jersey,
        Law Division, Cumberland County, Docket No.
        L-0057-08.

        Louis Giansante argued the cause for
        appellants (Giansante & Associates, L.L.C.,
        attorneys; Mr. Giansante, on the briefs).

        Mitchell H. Kizner argued the cause for

---

[1]   Although "Balsley" is spelled inconsistently in the record, we adopt the judge's spelling.

respondent Jeannette Haynes, Executrix of the Estate of Stephan Musey (Flaster/Greenberg, P.C., attorneys; Mr. Kizner and Douglas S. Stanger, on the joint brief).

Gruccio, Pepper, DeSanto & Ruth, P.A., attorneys for respondents Richard Goldstine and Marilyn Goldstine (Walter F. Gavigan, on the joint brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

Victor Rosario, Nilda Maldonado, and Jose and Noemi Flores (collectively plaintiffs) appeal from a March 11, 2014 order denying their motion to file a fourth amended complaint against Jeannette Haynes, in her individual capacity and as executrix of defendant the Estate of Stephan Musey (the Estate), Richard and Marilyn Goldstine,[2] and William Musey, Jr. (the grandson), alleging violations under the Uniform Fraudulent Transfer Act (the Act), N.J.S.A. 25:2-20 to -34.

Plaintiffs purchased two houses constructed on land originally owned by Musey, which was contaminated. They instituted this action against various defendants seeking damages to remediate the resultant environmental contamination. The asserted violations under the Act pertain to two alleged fraudulent transfers of a residence originally owned by

---

[2] Although "Goldstine" is also spelled "Goldstein" in the record, we adopt the judge's spelling.

defendant Stephan Musey, located on Geissinger Avenue (the Geissinger property).

In 2006, Musey sold the Geissinger property to his daughter, Haynes, for $1 (the 2006 transfer), and retained a life estate for himself until his death in June 2008. In 2012, Haynes, after holding title for approximately six years, sold the Geissinger property to the Goldstines (the 2012 transfer), who are the in-laws of the grandson.[3]

Plaintiffs contended that the transfers were designed to avoid collection on any potential judgment against the Estate following Musey's death. The judge denied plaintiffs' motion to assert new claims under the Act, finding the new claims time barred under either the four-year statute of limitations (SOL) or one-year tolling period contained in N.J.S.A. 25:2-31(a).

Plaintiffs, who have characterized the underlying environmental dispute as a tort case, urge us to conclude that the commencement of the SOL under the Act runs from a different date than in commercial contract transaction cases. Plaintiffs admit that in commercial contract transaction cases, the SOL under the Act runs from the date of the transfer. They maintain, however, that in tort cases, the SOL is triggered once

---

[3] We adopt the judge's finding at the motion hearing that the transfer was made in 2012.

they obtain a judgment. Haynes and the Goldstines assert that the SOL under the Act is triggered on the date of the alleged fraudulent transfer.

Applying the plain text of N.J.S.A. 25:2-31, we hold that the commencement of the SOL for claims under the Act in an underlying tort case is not contingent on obtaining a judgment. Thus, the SOL for causes of action under N.J.S.A. 25:2-25(a), regardless of whether the claimant has become a judgment creditor, expires four years from the date the transfer was made or the obligation was incurred or, if later, one year after the transfer or obligation was discovered by the claimant.[4] We decline to draw the distinction requested by plaintiffs that the commencement of the SOL under the Act runs from a different date in tort disputes than in commercial contract transaction cases. We conclude that the proposed claims under the Act are barred and therefore affirm.

I.

Musey owned property comprising three separate but adjacent

---

[4] Although our Supreme Court refers to N.J.S.A. 25:2-31 as a statute of limitations, Sasco 1997 Ni, LLC v. Zudkewich, 166 N.J. 579, 585 (2001), other courts have characterized it as a statute of repose because it refers to the extinguishment of substantive rights and is self-executing, see, e.g., Gibbons v. First Fid. Bank, N.A. (In re Princeton-New York Investors, Inc.), 199 B.R. 285, 293 n.4 (Bankr. D.N.J. 1996) (finding N.J.S.A. 25:2-31 is a statute of repose because it bars the right to bring the action and not the remedy).

lots located in Vineland (the property). Between 1972 and the 1980s, Musey and his son, defendant William Musey (the son), operated an auto body and repair shop on the property. By 2003, Musey admitted to the New Jersey Department of Environmental Protection (NJDEP) that the property contained contaminated soil. The NJDEP required Musey to remediate the property, which he never did.

Without resolving the environmental issues, Musey and defendant Marco Construction and Management, Inc. (Marco Construction) entered into a joint venture agreement to build and sell two residential homes on a portion of the property. Marco Construction took title to the property, built the houses, and listed them for sale using defendant Balsley/Losco Real Estate (Balsley/Losco). Plaintiffs then purchased the homes without knowledge of the environmental problems. Soon after, Musey made the 2006 transfer.

In January 2008, plaintiffs filed their complaint against Marco Construction, Stephan Musey, the son, Dominic Antonini (owner of Marco Construction), and Balsley/Losco.[5] After Musey

---

[5] Plaintiffs alleged the following causes of action: violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 (Count One); breach of contract (Count Two); misrepresentation (Count Three); negligence (Count Four); equitable fraud (Count Five); and a violation of the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.24 (Count Six).

passed away, plaintiffs named the Estate as a party, which defaulted.

The Estate was probated in July 2008. As to the probate matter, plaintiffs' counsel indicated generally in his merits brief that plaintiffs "were claimants in the [E]state, however, their claims were never addressed." There is no evidence in this record plaintiffs contended in the probate matter that the Geissinger property constituted an asset of the Estate. By the time the Estate was probated, Haynes had title to the Geissinger property, which had been publicly recorded in the county clerk's office for approximately one year.

In March 2011, more than four years after the 2006 transfer, the son filed an individual petition in bankruptcy. As a result, this matter was stayed until March 2012. Plaintiffs' counsel indicated in his merits brief that plaintiffs were "creditors" in the bankruptcy proceedings. There is no evidence in this record that plaintiffs questioned the propriety of the 2006 transfer, or that they argued in the bankruptcy matter the son played any role in the 2006 transfer.

In 2012, Haynes sold the Geissinger property to the Goldstines for $110,000. Plaintiffs speculate the Geissinger property is worth more than the sale price. The grandson and his wife, the Goldstines' daughter, then occupied the Geissinger

property. On December 6, 2013, the court entered default judgment against the Estate and awarded plaintiffs $1,843,210.07 on their CFA claim.[6]

Plaintiffs then filed their motion for leave to file a fourth amended complaint, asserting claims under the Act. In February 2014, the judge conducted oral argument and on March 11, 2014, the judge denied the motion, issuing a written opinion and entering the order under review.[7]

The judge concluded the four-year SOL contained in N.J.S.A. 25:2-31(a) barred plaintiffs from bringing a claim under the Act as to the 2006 transfer. The judge also addressed whether the one-year tolling period contained in N.J.S.A. 25:2-31(a) saved plaintiffs' claim as to the 2006 transfer. He found, based on a letter from plaintiffs' counsel, plaintiffs knew about the 2006 transfer in May 2012. As a result, the judge concluded that the one-year tolling period expired in May 2013. Consequently, he determined plaintiffs' claim as to the 2006 transfer was time barred. The judge did not reach the claim related to the 2012 transfer because barring the 2006 claim broke the chain of title

---

[6] This amount is comprised of damages in the amount of $501,942, trebled ($1,505,826) pursuant to the CFA, plus $337,384.07 for attorneys' fees and costs.

[7] The order denied other relief not the subject of this appeal, and which our opinion otherwise rendered moot.

and precluded plaintiffs from arguing the Geissinger property was an asset of the Estate.

In 2014, the judge conducted a bench trial as to the remaining defendants. In September 2014, the judge rendered a thirty-five page written opinion expressing his findings of fact and conclusions of law. On October 16, 2014, the judge entered a final judgment in plaintiffs' favor against Marco Construction on Count One (CFA),[8] Count Two (breach of contract), Count Three (misrepresentation), and Count Six (Spill Act).[9] The judge dismissed Count Four (negligence) and Count Five (equitable fraud).[10] The remaining parties either settled or were dismissed

---

[8]   For the CFA claim, the judge entered a judgment against both Marco Construction and Dominic Antonini individually. Judgment as to Counts Two, Three, and Six was rendered solely against Marco Construction.

[9]   As to the CFA charges, the judge awarded plaintiffs Victor Rosario and Nilda Maldonado trebled damages totaling $754,437, and plaintiffs Jose and Noemi Flores trebled damages amounting to $730,405.98. Plaintiffs were also awarded attorneys' fees totaling $362,461.76 and filing fees and costs totaling $12,814.13. As to the breach of contract claims, the court awarded Rosario and Maldonado $251,479 and Jose and Noemi Flores $243,468.66. As to misrepresentation, the court awarded Rosario and Maldonado $251,479 and Jose and Noemi Flores $243,468.66. The court awarded Rosario and Maldonado and Jose and Noemi Flores $35,000 for loss of quiet enjoyment. As to the Spill Act claims, the court ordered that plaintiffs were entitled to full contribution for any future cleanup and remediation costs that should arise.

[10]   These claims were alleged against both Marco Construction and Dominic Antonini.

from the case and have not participated in this appeal.

                                    II.

On appeal, plaintiffs argue that (1) the commencement of the SOL for their claims under the Act was triggered by obtaining final judgment on October 16, 2014; (2) their claims under the Act should have been tolled under the adverse domination rule; (3) the remedies under the Act are "cumulative not exclusive" and are therefore "not [i]ntended to [d]isplace [c]ommon [l]aw [a]ctions"; and (4) their claims under the Act relate back to the filing of the complaint in January 2008, pursuant to Rule 4:9-3.

The question as to what date triggers the SOL under the Act is a legal one. "When deciding a purely legal issue, review is de novo." Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (quoting Fair Share Hous. Ctr., Inc. v. N.J. State League of Muns., 207 N.J. 489, 493 n.1 (2011)). Here, the judge properly concluded that the SOL is triggered by the date of the 2006 transfer.

Rule 4:9-1 governs motions to amend pleadings. Motions for leave to amend are granted liberally, "even if the ultimate merits of the amendment are uncertain." Prime Accounting Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013). Nonetheless,

> [o]ne exception to that rule arises when the amendment would be "futile," because "the

amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006). "'[C]ourts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. . . . [T]here is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.'" Ibid. (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997)).

[Ibid. (alterations in original).]

We conclude that the proposed amendment asserting claims under the Act would be futile because the SOL expired. As a result, the judge did not err.

A.

We reject plaintiffs' contention that the commencement of the SOL under the Act should be analyzed differently in tort and commercial contract transaction cases. Specifically, plaintiffs maintain the SOL under the Act, in tort cases, is triggered only after a party obtains final judgment. The premise of this contention, which is indubitably incorrect, is that the transfers of the Geissinger property amounted to claims under the Act only after plaintiffs became judgment creditors in the underlying tort case.

Plaintiffs focus primarily on the "right to payment" language contained in N.J.S.A. 25:2-21, asserting that in an

underlying tort case, a claimant enjoys that right only after obtaining a judgment. To address plaintiffs' assertion, we must interpret the text of the SOL under the Act. Our paramount goal in interpreting a statute is to ascertain the Legislature's intent, and "generally[] the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). When interpreting a statute, we give words "their ordinary meaning and significance." Tumpson v. Farina, 218 N.J. 450, 467 (2014) (quoting DiProspero, supra, 183 N.J. at 492).

The plain language of N.J.S.A. 25:2-31(a) clearly provides that the triggering date for calculating the SOL under the Act is the transfer or the date when the obligation was incurred. The text of the SOL does not differentiate between tort and commercial contract transaction cases. It is clear that becoming a judgment creditor is not a precondition to the commencement of the SOL related to underlying tort cases.

> A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:
>     a. Under subsection a. of R.S. 25:2-25, within four years <u>after the transfer</u> was made or the obligation was incurred or, if later, within one year <u>after the transfer</u> or obligation was discovered by the claimant[.]
>
> [N.J.S.A. 25:2-31(a) (emphasis added).]

The Act addresses fraudulent transfers, not solely as to present creditors, but also as to future creditors — i.e., creditors whose claims arose after the transfer was made but not necessarily before judgment in an underlying matter is entered. N.J.S.A. 25:2-25 states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

The Act provides precise definitions of the terms used. A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." N.J.S.A. 25:2-22. For cases involving real property, "transfer" has been defined as the date real property is recorded. See N.J.S.A. 25:2-28(a)(1); Boardwalk Regency Corp. v. Burd, 262 N.J. Super. 162, 165 (App. Div. 1993). A "debtor" is defined as "a person who is liable on a claim." N.J.S.A. 25:2-21. A "'claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured, or unsecured." Ibid. A "creditor" is "a person who has a claim." Ibid.

Importantly, a claim, as that term is defined in the Act, need not be reduced to a judgment. Consequently, a "creditor" may include "the holder of an unliquidated tort claim or a contingent claim." Ibid.; see also Sasco, supra, 166 N.J. at 487 (stating the clear language of N.J.S.A. 25:2-31 reveals "the Legislature concluded that the date of judgment was not determinative of the timeliness of claims under the [Act]"); Flood v. Caro Corp., 272 N.J. Super. 398, 405 (App. Div. 1994) (stating "[a]ny creditor, with or without a judgment, may prosecute a suit" under the Act).

As a result, the "right to payment" of a claim, referenced in N.J.S.A. 25:2-21, is not dependent on obtaining a judgment because the Act refers to claims "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Ibid. Because "'[t]he [Act] does not prevent a present or future "creditor" from seeking a remedy prior to judgment[,]'" Sasco, supra, 166 N.J. at 586-87 (quoting Intili v. DiGiorgio, 300 N.J. Super. 652, 659 (Ch. Div. 1997)), it is logical to conclude in all cases that the SOL provided in N.J.S.A. 25:2-31(a) commences from the date of the

transfer or the date the transfer is discovered.  Under the Act, "[a]ny creditor, with or without a judgment, may prosecute a suit."  Flood, supra, 272 N.J. Super. at 405.

Granting plaintiffs' request to use a different triggering SOL date depending on the nature of the claim — commercial contract transaction or tort cases — would require us to rewrite an enactment of the Legislature or presume that the Legislature intended something other than what it clearly expressed in the plain language of the statute.  It is well settled that "[a] court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."  O'Connell v. State, 171 N.J. 484, 488 (2002).  As a result, we will not do so here.

### B.

Although the plain language of N.J.S.A. 25:2-31 is clear, the purpose and history of the Act, as well as New Jersey Supreme Court precedent, provide conclusive support for our holding.

New Jersey adopted the Act in 1988 to replace the Uniform Fraudulent Conveyance Act, which had been in effect since 1919.  Sasco, supra, 166 N.J. at 584.  "The Act modernizes the law respecting the rights and remedies of creditors in cases of

transfers of assets by debtors[,] the design or effect of which is to prevent or impede satisfaction of claims out of the debtor's assets, or to prefer favored claimants." Flood, supra, 272 N.J. Super. at 403.

"The purpose of the [Act] is to prevent a debtor from placing his or her property beyond a creditor's reach." Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999). "Underlying the Act is the notion that a debtor cannot deliberately cheat a creditor by removing his property from the 'jaws of execution.'" Ibid. "Fraudulent conveyance claims thus allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Ibid. The Act prohibits any transfer intended "to hinder, delay, or defraud any creditor of the debtor." N.J.S.A. 25:2-25(a).

The definition of claim contained within N.J.S.A. 25:2-21 is derived from Section 101(4) of the Bankruptcy Code, 11 U.S.C.A. § 101(4). 7A Uniform Laws Annotated, Business and Financial Laws (Master ed. 2006) 16. "Since the purpose of the [Uniform Fraudulent Transfer Act] is primarily to protect unsecured creditors against transfers and obligations injurious to their rights, the words 'claim' and 'debt' . . . generally have reference to an unsecured claim and debt." Ibid. Indeed, "[u]nder the Bankruptcy Code, the courts have noted that the

term 'claim' has been defined as broadly as possible." Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.), 503 B.R. 239, 309 (Bankr. S.D.N.Y. 2013). Other courts have adopted this same principle in cases interpreting their state's Uniform Fraudulent Transfer Act. See, e.g., ibid. (referencing the same definition of "claim" in both Oklahoma's and Utah's Uniform Fraudulent Transfer Act); Skyline Potato Co. v. Tan-O-On Mktg., Inc., 879 F. Supp. 2d 1228, 1262 (D.N.M. 2012) (explaining the "statutory definition[] for the term . . . claim, along with the manner in which courts have applied th[at] term[], the potential scope of persons who can qualify as proper plaintiffs under [New Mexico's Uniform Fraudulent Transfer Act] is 'the broadest available' one a legislature could have adopted").

In Sasco, our Supreme Court held the SOL under the Act commences on the date of transfer, as "both the explicit language of and the intent underlying the [Act] demonstrate that the statute operates without regard to when the creditor obtains a judgment." Sasco, supra, 166 N.J. at 587. The Sasco Court further noted:

> The explicit language of the [Act] provides that the four-year provision runs from the date "the transfer was made," N.J.S.A. 25:2-31a, and indicates that the Legislature concluded that the date of judgment was not determinative of the timeliness of claims under the [Act]. N.J.S.A. 25:2-21. We cannot ignore that intent.

16

[*Id.* at 588.]

Other jurisdictions agree with our conclusion the SOL runs in all cases from the date of transfer, not the judgment. An appellate court in Arizona, in *Moore v. Browning*, 50 P.3d 852, 859-60 (Ariz. Ct. App. 2002), similarly held that the plain language of the statute compels the conclusion the SOL runs from the date of the transfer; the court found "no reason to deviate from the first rule of statutory construction." *Accord Gulf Ins. Co. v. Clark*, 20 P.3d 780, 788 (Mont. 2001); *First Sw. Fin. Servs. v. Pulliam*, 912 P.2d 828, 830-31 (N.M. Ct. App. 1996); *Salisbury v. Majesky*, 817 N.E.2d 1219, 1221-22 (Ill. App. Ct. 2004), *appeal denied by*, 829 N.E.2d 794 (Ill. 2005); *see also Levy v. Markal Sales Corp.*, 724 N.E.2d 1008, 1010 (Ill. App. Ct.) (stating that "the clear and unambiguous wording of the Act demonstrates[] the four-year limitation period begins to run on the date the challenged transfer was made"), *appeal denied by*, 731 N.E.2d 764 (Ill. 2000).

We now apply these legal principles to the facts of this case. As to the 2006 transfer, it is undisputed the four-year SOL expired in 2010. Plaintiffs' counsel admitted before us plaintiffs knew about the 2006 transfer in May 2012. Thus, the one-year tolling provision under N.J.S.A. 25:2-31(a) expired in May 2013. Plaintiffs filed their motion for leave to amend in

17                                                      A-1562-14T3

December 2013. As a result, the claim related to the 2006 transfer is time barred.

As to the 2012 transfer, plaintiffs' counsel conceded at oral argument that if the 2006 transfer was untimely under the Act, then the purported claim as to the 2012 transfer would be barred as well. The claim as to the 2012 transfer, that Haynes fraudulently transferred property that belonged to the Estate, is dependent on the Geissinger property being part of the Estate. If plaintiffs are barred by the SOL from pursuing the allegation that the 2006 transfer was fraudulent, then what Haynes did with the Geissinger property six years later is irrelevant. We emphasize that in the probate matter, and even in the bankruptcy proceedings, plaintiffs did not fully pursue any argument that the Geissinger property constituted an asset of the Estate, or that the co-executors wrongfully retained assets of the Estate. If plaintiffs are precluded from challenging Musey's transfer to Haynes of the Geissinger property in 2006, then plaintiffs cannot now argue that Haynes, six years later, fraudulently transferred that property to the Goldstines. The practical effect of barring plaintiffs from raising claims under the Act as to the 2006 transfer means that by the time of the 2012 transfer, the Geissinger property was neither Musey's nor the Estate's.

After reviewing the record and the briefs, we conclude that plaintiffs' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following brief remarks.

Plaintiffs rely on the non-precedential opinion of Wing v. Dockstader, 482 F. App'x 361 (10th Cir. 2012). In that matter, the court concluded Utah's Uniform Fraudulent Transfer Act supported the plaintiff's contention his claims should have been tolled under the doctrine of adverse domination, a corporate law equitable tolling doctrine applicable where wrongdoers control or dominate a corporation and are unlikely to bring claims in the name of the corporation against themselves. Plaintiffs offer no reasonable explanation for how such a doctrine would be applicable in this setting.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION