**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2257-23

POLINA ROITBURG, Executor of
the Estate of DAVID ROITBURG,

     Plaintiff-Respondent/Cross-
     Appellant,

v.

LEONID ROITBURG a/k/a LEON
ROITBURG, and NATIONAL
PRECISION TOOL COMPANY, INC.
a/k/a NPTC,

     Defendants-Appellants/Cross-
     Respondents,

and

DESIGN OF TOMORROW, INC. a/k/a
EDUCATIONAL & LABORATORY
SYSTEMS a/k/a ELS,

     Defendant,

and

LEONID ROITBURG, DESIGN OF
TOMORROW INC., and NATIONAL
PRECISION TOOL COMPANY, INC.,

Third-Party Plaintiffs,

v.

POLINA ROITBURG and IGOR
ROITBURG, personally,

Third-Party Defendants.

_____

Argued December 17, 2025 – Decided January 28, 2026

Before Judges Mayer, Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Law
Division, Morris County, Docket No. L-1478-16.

Mark D. Miller argued the cause for appellants/cross-
respondents Leonid Roitburg and National Precision
Tool Company, Inc. (Dubeck & Miller, attorneys; Mark
D. Miller, of counsel and on the briefs).

Linda S. Agnew (Harras Bloom & Archer, LLP) argued
the cause for respondent/cross-appellant Polina
Roitburg, Executor of the Estate of David Roitburg.

PER CURIAM

This case is before us for the third time.  See Roitburg v. Roitburg, No.

A-2963-18 (App. Div. Dec. 14, 2020) (Roitburg I); Roitburg v. Roitburg, No.

A-0047-21 (App. Div. Aug. 31, 2023) (Roitburg II).

We summarize the facts and procedural history related to this ongoing

intrafamily dispute.  Brothers Leonid Roitburg (Leon) and David Roitburg

A-2257-23

(David) formed a business known as Design of Tomorrow, Inc. (DOT).[1] DOT "constructed custom kitchens and cabinetry and operated out of a building owned by National Precision Tool Company, Inc. (NPTC)."[2] Roitburg I, (slip op. at 2). David's wife, Polina Roitburg, served as DOT's bookkeeper. Id. (slip op. at 3).

As equal shareholders in DOT, Leon and David executed a buy-sell agreement in 2006 regarding their shares in the company. Under this agreement, DOT purchased a $1 million life insurance policy to be used in the event of either brother's death. The surviving brother would purchase the deceased brother's shares using the proceeds of the life insurance policy.

The buy-sell agreement also provided for the repayment of any loans to DOT by the deceased brother, stating:

> If the CORPORATION owes money to the deceased SHAREHOLDER, the CORPORATION shall pay such amount to the estate of the deceased SHAREHOLDER in the normal course of business, but no later than two (2) years following the deceased SHAREHOLDER'S date of death.

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

[2] NPTC is a corporation owned solely by Leon. Roitburg I, (slip. op. at 2-3).

3

DOT had been insolvent for several years. Id. (slip op. at 3). In 2013, DOT received loans from David, Polina, NPTC, and other family and friends to remain operational. Id. (slip op. at 4). Prior to his death in October 2014, "David secured a $2.05 million contract for DOT to restore and modernize barracks at the United States Military Academy at West Point." Ibid. Due to the company's outstanding debt, "DOT had to execute a subordination agreement, whereby repayment of DOT's loan obligations was subordinated to the surety company" to obtain this contract. Ibid.

After David's death, the parties disputed the amount, if any, DOT owed to David's estate as repayment for his loans to the company, resulting in the present litigation.

In a complaint filed in July 2016, plaintiff alleged breach of contract against DOT; unjust enrichment against Leon, DOT, and NPTC; piercing the corporate veil against Leon; account stated and fraudulent conveyance against DOT under the Uniform Fraudulent Transfer Act (UFTA),[3] N.J.S.A. 25:2-20 to -34; and civil conspiracy and aiding and abetting against Leon and NPTC. Regarding the UFTA claim, plaintiff alleged Leon was the alter ego of DOT and

---

[3] Effective August 10, 2021, the UFTA became the Uniform Voidable Transactions Act (UVTA), N.J.S.A. 25:2-20 to -36.

NPTC and he fraudulently transferred funds from DOT to NPTC. Id. (slip op. at 4-6).

Leon and NPTC (collectively, defendants) filed a counterclaim against plaintiff, as well as a third-party complaint against Polina and her son, Igor. Id. (slip op. at 6).

After a bench trial in 2018, the trial judge entered judgment for plaintiff for the reasons set forth in a written decision. The judge found DOT had breached the terms of the buy-sell agreement by not repaying David's loans to the company within two years of his death. The judge awarded plaintiff damages in the amount of $459,103.14, plus interest and costs, but denied plaintiff's request for counsel fees. Id. (slip op. at 6-9). Although the judge found Leon had disregarded corporate formalities, diverted corporate funds for his personal use, and drained DOT's bank account in disregard of the company's obligation to repay David's loans, the judge "did not specifically find that Leon committed fraud" and did not address plaintiff's UFTA claim. Id. (slip op. at 7).

The parties cross-appealed. We affirmed the judgment for plaintiff but reversed the judge's determination that Leon or NPTC could be held liable to pay the awarded damages, concluding there was no basis to pierce the corporate veil. Id. (slip op. at 10-28). Additionally, we remanded for the trial court to

5

address plaintiff's UFTA claim.  Id. (slip op. at 28).  On plaintiff's cross-appeal for counsel fees, we concluded the judge had properly denied the fee request because there was no applicable exception to the American Rule and no basis for an award under the buy-sell agreement.  Id. (slip op. at 25-26).

On remand, the judge reviewed the trial record and entered judgment for defendants on plaintiff's UFTA claim.  Plaintiff appealed, and we reversed and remanded for further proceedings.  Roitburg II, (slip op. at 28).

In reversing, we concluded the remand judge had applied the incorrect legal standard to assess plaintiff's UFTA claim.  Id. (slip op. at 10-15).  Applying the correct legal standard, we held:  "Plaintiff established by clear and convincing evidence that defendants violated section 27(b) of the UFTA."  Id. (slip op. at 15).

We also concluded the remand judge had "failed to properly consider" defendants' defense to the UFTA claim under N.J.S.A. 25:2-30(f)(2) that six specific transfers[4] precluded repayment of David's debt because the payments "were made in the ordinary course of business or financial affairs of [DOT] and

---

[4]  The six specific transfers and alleged reasons supporting those transfers are set forth in Roitburg II, (slip op. at 5).  Defendants argued all six transfers reflected payments for legitimate business expenses incurred in the ordinary course of DOT's business.  Ibid.

[Leon, his wife, and NPTC]." Id. (slip op. at 21) (alterations in original). Although we expressed "skepticism" regarding defendants' ability to prove the "ordinary course" defense, we declined to exercise original jurisdiction to resolve the issue. Id. (slip op. at 24).

On remand, we directed the judge to resolve the following: (1) whether defendants were entitled to the defense under N.J.S.A. 25:2-30(f)(2), demonstrating payments were made by DOT in the ordinary course of business; and (2) if not, determine the appropriate remedy for defendants' UFTA violation, including consideration of whether David's estate was an "insider" for purposes of the UFTA.

We also directed the judge to consider, if applicable, how "insider" status might affect the repayment of DOT's debts because the premise behind enactment of N.J.S.A. 25:2-27(b) is that an insolvent debtor should first pay debts owed to unrelated creditors before repaying debts owed to corporate insiders. Id. (slip op. 26) (citing Flood v. Caro Corp., 272 N.J. Super. 398, 404-05 (App. Div. 1994)). Specifically, we stated:

> On remand . . . the judge shall initially decide whether defendants have proven by a preponderance of evidence that each of the six transfers were "made in the ordinary course of business or financial affairs of [DOT] and [Leon, his wife, and NPTC]," N.J.S.A. 25:2-30(f)(2). If the judge decides defendants have carried

7

their burden of proof on the issue as to all six transfers, the court shall enter judgment in favor of defendants.

If, however, the judge concludes defendants failed to carry their burden of proof on this issue as to any of the transfers, then the court shall enter judgment in favor of plaintiff on her UFTA claim and proceed to decide an appropriate remedy. In doing so, the judge should determine whether David's estate is an "insider" for purposes of the UFTA and, if so, the effect of that finding upon the court's fashioning of a proper remedy.

[Id. (slip op. at 26-27).]

On the second remand, the parties elected not to present any additional evidence for the judge's consideration in addressing the remanded issues. The judge heard arguments on January 4, 2024, and reserved decision.

On February 9, 2024, the judge entered judgment in favor of plaintiff with an accompanying statement of reasons. The judge concluded the six transfer payments "were not in the 'ordinary [course] of business' based on the Appellate [Division]'s findings," as "[e]ach transaction in question was not normal when reviewed in the light of DOT's history of business practices."

Additionally, the judge concluded plaintiff was not an insider under N.J.S.A. 25:2-22 of the UFTA. The judge explained:

The facts show that David Roitburg was an insider while he was alive. Upon his death, his shares in DOT passed for a time to his estate. Although not specifically mentioned in the statute, the facts of its

8

ownership and temporary control permit[] a finding that his estate is an insider as well. Once the estate transferred its interest to Leon it lost its control and therefore could no longer be considered an insider. The answer lies in the timing of the transfers. When the transfers occurred, David Roitburg was dead and the [e]state's interest had been transferred to Leon Roitburg. Therefore, [p]laintiff cannot be considered an insider as the estate had no control over DOT at the time of the transfers.

Plaintiff therefore is not an insider.

Because the estate and plaintiff were not insiders at the time of the six specific transfers, the judge held DOT must pay David's estate the sum of $459,103.14.

Relying on our prior decision, the remand judge also denied plaintiff's request for attorney's fees, finding no basis for an award of fees under the buy-sell agreement. Nor did the judge discern any basis for an award of attorney's fees under N.J.S.A. 25:2-29(a)(3)(c), which allows a court to award "any other relief the circumstances may require" for UFTA violations. The judge concluded "[t]his general [statutory] language does not override the clear mandate of the American Rule and the [c]ourt cannot grant fees barring any explicit authorization to do so in the statute."

The parties cross-moved for reconsideration. On March 22, 2024, the court heard counsels' arguments. The judge denied the motions in an oral decision, as well as a written order with an attached written statement of reasons.

9

In the written decision, the judge reiterated his findings that David's estate was not an insider under the UFTA, and plaintiff was not entitled to attorney's fees under the UFTA. The judge explained:

> The [p]laintiff in this matter is David Roitburg's [e]state via its executor Polina Roitburg. The [p]laintiff is not David Roitburg, the [p]laintiff is not Polina Roitburg, the [p]laintiff is the [e]state of David Roitburg. The [e]state is neither related by consanguinity, related by adoption, nor married to David Roitburg. The [c]ourt is well aware that the facts show that David Roitburg was an insider while he was alive, this is clear and uncontroverted. Upon his death, David Roitburg's shares in DOT passed to his [e]state. Once the [e]state transferred its interest to Leon Roitburg the [e]state lost its control over the DOT shares and therefore could no longer be considered an insider. When the transfers occurred, David Roitburg was dead and the [e]state's interest had already been transferred to Leon Roitburg. As the question of an insider stems from when the transfers are made, the fact that the [e]state had no present interest in DOT was pivotal in the [c]ourt's conclusion that [p]laintiff was not an insider.
>
> Plaintiff cannot be considered an insider as the [e]state had no control over DOT or its shares at the time of the transfers.

Defendants filed a notice of appeal. Plaintiff filed a notice of cross-appeal.

In their appeal, defendants argue the judge erred in finding plaintiff was not an insider under N.J.S.A. 25:2-22. We disagree.

The trial judge's interpretation of the UFTA, and application of the law in the context of established facts, presents a legal issue that we review de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019).

The judge concluded DOT was liable to plaintiff under N.J.S.A. 25:2-27(b), which provides:

> A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

This provision of the UFTA is "designed to deal with preferences" in the repayment of debts. Flood, 272 N.J. Super. at 404. The "premise" of N.J.S.A. 25:2-27(b) "is that an insolvent debtor should pay debts owed to unrelated creditors before paying debts owed to corporate insiders." Id. at 404-05.

The UFTA defines an "insider," in relevant part, as follows:

> "Insider" includes:
>
> . . . .
>
> b. If the debtor is a corporation:
>
> (1) A director of the debtor;
>
> (2) An officer of the debtor;
>
> (3) A person in control of the debtor;

A-2257-23

(4) A partnership in which the debtor is a general partner;

(5) A general partner in a partnership described in paragraph (4) of subsection b. of this definition; or

(6) A relative of a general partner, director, officer, or person in control of the debtor.

[N.J.S.A. 25:2-22 (emphasis added).]

The UFTA states the term "'[p]erson' means an individual, estate, partnership, association, trust, business or nonprofit entity, public corporation, government or governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." Ibid. (emphasis added). The UFTA further states the term "'[r]elative' means an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree." Ibid.

We are satisfied the remand judge's conclusion that David's estate was not an insider is consistent with the statutory definition of an insider under N.J.S.A. 25:2-22. The judge properly found David and Polina were insiders while David was alive and controlled DOT, and David's estate was an insider until Leon

purchased David's shares in DOT. However, upon Leon's purchase of David's shares, the estate was no longer an insider because it no longer controlled the debtor corporation. At that point, Leon was DOT's sole shareholder and he alone exercised control over DOT and its repayment of debts. Thus, the purpose of N.J.S.A. 25:2-27(b) is fulfilled by DOT's repayment of its debt to the estate, a non-insider, without any means of control over the company's payments, before the repayment of the company's debts to insiders.

We reject defendants' argument with respect to the alleged misdeeds of Polina and her son Igor after David's death and Polina's alleged control over DOT after David's death. In our prior opinion, we affirmed the trial judge's findings based on the competent, relevant, and credible evidence in the trial record. See Roitburg I, (slip op. at 10-28). The parties presented no new evidence to the trial judge during the remand proceedings. Thus, the facts established as part of the judge's ruling after the bench trial, and affirmed by this court on appeal, may not be relitigated in this appeal. See Lombardi v. Masso, 207 N.J. 517, 538-39 (2011).

Contrary to defendants' argument, we are satisfied it is not "a gross miscarriage of justice" for the estate to be repaid prior to the insider debts. Consistent with the UFTA, debts to outsiders, including the estate, are to be paid

13

before debts to corporate insiders.  See N.J.S.A. 25:2-27(b).  Moreover, under the buy-sell agreement, DOT had a contractual obligation to pay monies owed to David's estate within two years of David's death.  Rather than comply with the obligations under the buy-sell agreement and repay monies owed to David's estate, Leon chose to repay debts to insiders.  As the trial judge found, Leon "had absolutely no intention of honoring the [buy-sell] agreement."

We next consider plaintiff's cross-appeal.  Plaintiff argues the judge erred in denying her request for attorney's fees under the UFTA.  We reject this argument.

The judge denied plaintiff's motion for attorney's fees, finding attorney's fees were not authorized under the buy-sell agreement, Rule 4:42-9, or the UFTA.  In denying attorney's fees, the judge explained:

> In the United States, the century long rule is that each party pays their own counsel fees unless provided otherwise by explicit agreement, contract, rule, or statute.  As the Appellate Division indicated, none of the aforementioned grounds for the payment of counsel fees apply here.  Plaintiff asserts that the promissory note vacates [her] obligation to pay [her] own counsel fees.  The [c]ourt disagrees with this assertion in the instant matter as did the Appellate Division when it previously considered this issue.  Plaintiff's claims are not a contractual basis to obtain fees in this litigation.
>
> Secondly, [p]laintiff argues that the UFTA section 29(a)(3)(c) includes language that permits the

14

granting of counsel fees. The language in question allows the [c]ourt to award "any other relief the circumstances may require." This general language does not override the clear mandate of the American Rule and the [c]ourt cannot grant counsel fees barring any explicit authorization to do so in the statute.

The issue of counsel fees was resolved in defendant[s'] favor in the December 14, 2020 decision. [Roitburg I, (slip op. at 24-26, 28)]. It is unclear why [p]laintiff raised this resolved issue.

In the first appeal, we affirmed the trial judge's denial of attorney's fees. Roitburg I, (slip op. at 24-26, 28). In the second appeal, we remanded to the trial court to address specific issues, which did not include attorney's fees. Roitburg II, (slip op. at 27-28). However, the prior appeals did not address plaintiff's argument that attorney's fees are permitted in UFTA actions under N.J.S.A. 25:2-29(a)(3)(c).

In his written decision denying reconsideration of attorney's fees under the UFTA, the judge rejected plaintiff's reliance on N.J.S.A. 25:2-29(a)(3)(c), noting the language in the statute was "nebulous" compared to other New Jersey statutes that explicitly allow attorney's fees. The judge declined to apply the out-of-state cases cited by plaintiff, finding those decisions were inconsistent with New Jersey law.

15

We review a trial judge's interpretation of a statute de novo. <u>Musker v. Suuchi, Inc.</u>, 260 N.J. 178, 185 (2025). The goal of statutory interpretation is to effectuate the Legislature's intent, as expressed in the language of the statute. <u>Ibid.</u> If the statute's terms are clear, we apply the statute as written. <u>Id.</u> at 186. If the statute's terms are ambiguous, we may consider extrinsic evidence to interpret the terms. <u>Ibid.</u>

New Jersey follows the American Rule, "which prohibits recovery of counsel fees by the prevailing party against the losing party." <u>In re Niles Tr.</u>, 176 N.J. 282, 294 (2003) (citations omitted). "The purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." <u>Ibid.</u> (citing <u>In re Est. of Lash</u>, 169 N.J. 20, 43 (2001) (Verniero & LaVecchia, JJ., dissenting)).

<u>Rule</u> 4:42-9 limits the circumstances for an award of attorney's fees. Those circumstances include "cases where attorney's fees are permitted by statute." <u>R.</u> 4:42-9(a)(8) (emphasis removed). "The history of [<u>Rule</u> 4:42-9] demonstrates that New Jersey has a strong policy against the shifting of counsel fees." <u>In re Niles Tr.</u>, 176 N.J. at 293-94 (citations omitted).

The UFTA does not expressly permit an award of attorney's fees. In requesting attorney's fees, plaintiff relies upon N.J.S.A. 25:2-29(a)(3)(c), which states:

> a. In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in [N.J.S.A. 25:2-30], may obtain:
>
> . . . .
>
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> . . . .
>
> (c) Any other relief the circumstances may require.

There is no New Jersey case awarding attorney's fees either generally under the UFTA or specifically under the catch-all provision of subsection (c). The statute requires any relief granted be "in accordance with applicable rules of civil procedure." Ibid.

N.J.S.A. 25:2-35(b) provides: "A claim in the nature of a claim under the 'Uniform Voidable Transactions Act,' . . . shall be governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred." Accordingly, any relief under the UFTA must be

17

consistent with New Jersey common law, including New Jersey's adherence to the American Rule and Rule 4:42-9 with respect to an award of attorney's fees.

When allowing for the recovery of attorney's fees, our Legislature has done so by enacting an express statutory provision.[5] See Borough of Englewood Cliffs v. Trautner, 260 N.J. 410, 419 (2025) ("There is no more persuasive evidence of legislative intent than the words by which the Legislative undertook to express its purpose." (quoting Fuster v. Twp. of Chatham, 259 N.J. 533, 547 (2025))). If the Legislature intended to allow for the award of attorney's fees under the UFTA, it would have so stated.

Plaintiff relies upon an unpublished federal case from outside the jurisdiction and a periodical in support of an award of attorney's fees under the UFTA. While some states permit recovery of attorney's fees under the UFTA,

---

[5] See, e.g., N.J.S.A. 2A:4-30.144(b)(11), N.J.S.A. 2A:15-59.1(a)(1), N.J.S.A. 2A:23B-14(e), N.J.S.A. 2A:32C-8, N.J.S.A. 2A:34-86(a), N.J.S.A. 2A:37B-1(c), N.J.S.A. 2A:44A-15, N.J.S.A. 2A:61C-1(c), N.J.S.A. 2C:13-8.1(d), N.J.S.A. 10:5-12.6, N.J.S.A. 10:5-27.1, N.J.S.A. 12A:2A-108(4), N.J.S.A. 12A:5-111(e), N.J.S.A. 12A:9-625(h)(3), N.J.S.A. 17:23-26(d), N.J.S.A. 17:23A-20(c), N.J.S.A. 17:33A-7(a), (d), N.J.S.A. 17:47B-19(a), N.J.S.A. 17B:30B-7(g)(3) and -12(f)(3), N.J.S.A. 34:1A-1.12(i), N.J.S.A. 34:11-67.1(b)(2), N.J.S.A. 34:11-79(h), N.J.S.A. 34:11B-12, N.J.S.A. 34:19-5, N.J.S.A. 34:21-18(b)(1), N.J.S.A. 39:6A-34, N.J.S.A. 42:2A-66, N.J.S.A. 43:3C-9.5(c)(2), N.J.S.A. 45:14D-24, N.J.S.A. 45:15-16.47(a), N.J.S.A. 45:15-16.80(a), N.J.S.A. 45:17A-33(m), N.J.S.A. 45:22A-37(a), N.J.S.A. 46:8-21.1, N.J.S.A. 46:8C-2(f), N.J.S.A. 47:1A-6, N.J.S.A. 56:3-13.16(d), N.J.S.A. 56:8-19, N.J.S.A. 56:15-6, and N.J.S.A. 59:9-5.

18

other states, including New Jersey, do not permit an award of attorney's fees under that statute.

The issue in this case is whether our Legislature intended to permit an award of attorney's fees under the UFTA. As we previously noted, the Legislature has clearly expressed when attorney's fees are recoverable under statutory law. The Legislature's failure to do so under the UFTA evidences a clear intent to reject an award of attorney's fees. The Legislature is free to amend the UFTA to authorize the recovery of attorney's fees if it chooses.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division